FRANK THAYER BOBLITS *v.* STATE OF
MARYLAND

[No. 191, September Term, 1967.]

*Decided July 9, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Thomas M. O'Mallery,* with whom was *Michael F. X. Dolan* on the brief, for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *James E. Kenkel, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

PER CURIAM.

The Appellant was convicted of receiving stolen goods by a jury in the Circuit Court for Prince George's County and sentenced to a term of four years.

The complaining witness, Claude H. Wickers, who was a numismatist in addition to his regular employment in a local public utility, testified that he returned to his apartment which he and his two young sons occupied about 5:00 P.M. on May 6, 1966, and found the apartment had been ransacked, the safe had been broken into and his coin collection, valued at approximately $6800, which was kept therein, had been stolen, as well as a pistol and a suitcase. He testified that prior to the date of the theft, he did not know the Appellant or his wife, but about five or six months thereafter, he went to see Mrs. Boblits at her apartment dwelling, accompanied by a friend named Bovello. He stated that at that time Mrs. Boblits gave him eighteen or twenty coins and some books, which he identified as having been stolen from his safe on May 6, 1966. He was not permitted to relate any conversations between him and Mrs. Boblits, and the State did not offer the coins or books in evidence.

Detective Blount of the Prince George's County Police Department testified that Mrs. Boblits gave him "a plastic bag

536

with coins in it"; he could not remember the date this occurred; and he did not state where or under what circumstances the bag was turned over to him. When shown the bag in court, he admitted that he had placed no identifying marks thereon but stated that it "appears to be the bag of coins I turned over to Sergeant Cissel." It was introduced as State's Exhibit No. 2.

Lt. Thompson of the Prince George's County Police Department testified that on June 14, 1966, Mrs. Boblits gave him four coins which were introduced into evidence as State's Exhibit No. 1. (These four coins and the bag of coins were the only exhibits introduced by the State.) He gave no testimony regarding the circumstances under which they were received from Mrs. Boblits, other than that the transfer took place outside of her home.

Mrs. Boblits was called as a State's witness but was excused when she exercised her right not to testify against her husband.

The State's final witness was Eugene J. Bovello, who testified that he was a long-time friend of the complaining witness and that he had employed the Appellant in his electrical business for ten or twelve months during the year 1965. He further testified that several months after the coin collection had been stolen, the victim came to him and said that the Appellant was suspected of the theft. Bovello thereafter telephoned the Appellant, asked him if he had anything to do with stealing the coins; told him that Mr. Wickers was mainly interested in getting the coins back; and that the Appellant "said he didn't know nothing about it at that time." Sometime later, he thinks it was in August or September of 1966, Bovello telephoned the Appellant again. On that occasion "what I said was, 'Frank, do you know anything about the coins?' and he said something about a colored fellow had tried to sell him some coins and that he found out they were so hot he wouldn't touch them, but that he would try to help Mr. Wickers get them back, if he could locate this colored fellow who had the coins." He next saw the Appellant about Christmas time while on his way to work at which time he asserts that the Appellant told him, "You know, I tried to locate that colored fellow about four times like I told you, for your buddy, I'd try to help him.' He said, 'I can't locate him.' He said, 'I sat up all night long, going to some

place where these people meet,' and he says he just couldn't locate this man. He said something about his wife had maybe four or five coins at home that were religious coins and he didn't know where she got them from, but that she had them." Several days later, he and Mr. Wickers "went over to the house and waited for about three and a half hours for Frank to come home and he never did. We went over to pick up these four or five coins and she gave him some coins." On cross examination he was asked by defense counsel if "she did not also at that time tell Mr. Wickers where she had gotten the coins?" And he answered: "I don't know where she got them, to be honest with you." Defense counsel then asked him: "Do you remember any conversation with her to Mr. Wickers as to where she got them?" Bovello answered: "I don't remember. I could go into a lengthy conversation about what she said. She said she knew——." The State's Attorney thereupon interposed an objection which was sustained by the trial judge. The witness was thereupon excused and the State's Attorney announced that this concluded the State's case.

The Appellant did not take the stand nor put on any evidence and his Motion for a Judgment of Acquittal was denied.

In this appeal, he contends, *inter alia,* that the Court erred in denying his Motion since there was no legally sufficient evidence to sustain his conviction.

The four elements necessary to sustain a conviction for the crime of receiving stolen goods are as follows: (1) the property must be received; (2) it must, at the time of its receipt, be stolen; (3) the receiver must have guilty knowledge that the property was stolen; (4) his intent in receiving it must be fraudulent. *Jordan v. State,* 219 Md. 36; *Cobb v. State,* 2 Md. App. 230; *McGlothlin v. State,* 1 Md. App. 256.

The Appellant contends that the State failed to prove the first essential element of the crime for, he argues, there was no evidence that he ever received the coins which his wife turned over to the police and to the victim. The State, on the other hand, contends "that the coins were, by the Appellant's verbal admissions to Mr. Bovello in his home, and therefore the rational inference which the jury could consider was that he [Boblits] in fact 'received' the stolen coins."

It is true that the exclusive possession of recently stolen goods, unexplained, has been held to give rise to a factual inference that the possessor was guilty of receiving stolen goods when a showing is made that another person was involved in the theft. *Debinski v. State,* 194 Md. 355, 360; *Scott v. State,* 1 Md. App. 481, 493-494; *Anglin v. State,* 1 Md. App. 85, 94.

Assuming that the State has shown that the coins were recently stolen, within the meaning of the rule, we are not persuaded that the State has shown that the coins were exclusively in the possession of the Appellant as required by the rule. At no time was actual or physical possession of the coins shown to be in the Appellant; and there is no question that the wife, rather than the Appellant, had exclusive physical possession of the coins at the time she turned them over to the authorities and the victim. There was no evidence to show in what manner and under what circumstances Mrs. Boblits came into possession of the coins. The only manner in which the State has connected the Appellant with the coins is through the testimony of Bovello that the Appellant "said something about his wife had maybe four or five coins at home that were religious coins and he didn't know where she got them from, but she had them." We are not convinced that Appellant's knowledge that his wife had four or five religious coins at home, which turned out to have been a part of the stolen coin collection, is sufficient evidence under the factual posture of this case to demonstrate that he had exclusive possession of the coins. This becomes more apparent when viewed in the light of a silent record as to how the wife obtained them.

It is true that in *Anglin v. State, supra,* we found that there was sufficient evidence to show that the husband in that case had exclusive possession of stolen goods found in his trailer home, which he shared with his wife, although he was not on the premises at the time they were discovered pursuant to a search warrant. There, however, it was shown that the husband had personally rented the trailer under an assumed name, he was seen carrying articles in and out of the trailer over a period of time, the contents of the trailer contained 25 watches, a dozen wallets, jewelry boxes, electric shavers, in fact, a "great array of merchandise, literally enough to stock a store * * *."

There it was found that the wife's actions and testimony showed that the goods were not hers or under her control.

In the case at bar, however, there was no direct proof that the Appellant lived in the apartment with his wife, or that he paid the rent, or that he was ever seen going in and out of the apartment. Moreover, the coins, apparently, were not of such bulk that they could not have been cached upon one's person and there was no showing that the wife did not exercise control and dominion over them. Cf. *Gamble v. State,* 2 Md. App. 271, 275.

Thus, the proof here is in no way commensurate with the proof in *Anglin, supra.* In our opinion, it was insufficient to establish that the Appellant had exclusive possession of the coins which is an essential ingredient of the rule. If the rule could not legally be invoked by the jury, then, of course, the inference of fact permitted by the rule could not be properly drawn.

While this Court does not inquire into and measure the weight of the evidence, we are required, in reviewing the sufficiency of the evidence in a trial before a jury, to determine whether there was any relevant evidence, or proper inferences drawable therefrom, legally sufficient to take the case to the jury. *Holt v. State,* 3 Md. App. 298, 304; *Agresti v. State,* 2 Md. App. 278, 284. As Chief Judge Murphy stated in *Cobb v. State, supra,* at page 234:

> "In every criminal case—whether tried before a jury or by the court sitting without a jury—evidence, to meet the test of legal sufficiency, must show directly, or support a rational inference of, the facts required to be proved; and the facts must be established, or the inference supported, beyond a reasonable doubt or to a moral certainty, or a reasonable doubt of an opposite fact must be created. *Vincent v. State,* 220 Md. 232; *Spencer v. State,* 1 Md. App. 264."

There was no direct evidence to prove that the Appellant ever received the stolen coins or to connect him with the crime. Thus, in the absence of the permissible inference which may be drawn under the rule governing possession of recently stolen

goods, there was no relevant evidence, or rational inference drawable therefrom, legally sufficient to support the jury's finding in this case that the Appellant was guilty, beyond a reasonable doubt, of the crime of receiving stolen goods. On the record before us we have mere possibility, conjecture, speculation or suspicion and this is not legally sufficient to establish, to a moral certainty, the Appellant's guilt. *Cobb v. State, supra,* 235.

Accordingly, the failure to grant the Appellant's Motion for Judgment of Acquittal constitutes reversible error and the case will be remanded for a new trial.

> *Judgment reversed and case remanded for a new trial.*